1

2

3                          UNITED STATES DISTRICT COURT

4                         NORTHERN DISTRICT OF CALIFORNIA

5

6

7   ALISON GALVANI,                              No. C 11-2062 PJH

8              Plaintiff,                        **ORDER GRANTING MOTION
                                                 TO DISMISS**
9        v.

10  PATRICK GALVANI,

11             Defendant.
    _____/
12

13        Defendant Patrick Galvani's motion to dismiss came on for hearing before this court

14  on September 7, 2011.  Having carefully reviewed the papers and having considered the

15  relevant legal authority and argument of counsel, the court hereby GRANTS defendant's

16  motion to dismiss for the reasons stated on the record and as set forth below.

17                                **BACKGROUND**

18        Plaintiff Alison Galvani filed this action against defendant Patrick Galvani, plaintiff's

19  father, in the Superior Court of California for the County of San Mateo on December 21,

20  2010.  Doc. no. 6, Ex. A ("Complaint").  Defendant removed the action from Superior Court

21  on April 27, 2011.  Plaintiff filed a motion to remand which, following an evidentiary hearing,

22  the court denied by order dated July 25, 2011.

23        Plaintiff alleges causes of action for wrongful death and conversion and seeks

24  compensatory damages of $2 million, general damages of $1 million and punitive damages

25  of $5 million.  Doc. no. 6, Ex. G ("Statement of Damages").  Plaintiff alleges that sometime

26  between August 7 and August 10, 1982, defendant wrongfully, negligently and/or

27  deliberately killed plaintiff's mother, Nancy Galvani, who was married to defendant at the

28  time of her death.  Compl. ¶ 5.  Plaintiff was 5 years old at the time of her mother's death.

1   Plaintiff alleges that defendant inherited her mother's estate and became plaintiff's sole

2   physical guardian and sole manager of plaintiff's estate.  Id. ¶¶ 6-7.  Defendant sent plaintiff

3   to boarding school in Oxford, England against plaintiff's wishes and denied plaintiff's

4   requests to return home in order to isolate her from family, friends, witnesses and

5   information about her mother's death.  Id. ¶¶  8-9.  Plaintiff alleges that defendant

6   manipulated her emotionally, intellectually and financially.  Id. ¶¶ 11-12.

7        Plaintiff alleges that defendant has denied any involvement in the death of Nancy

8   Galvani, and provided plaintiff with false and misleading information to deter or mislead

9   plaintiff from discovering the truth about her mother's death.  Id. ¶ 14.  Plaintiff alleges that

10   defendant's manipulation and control over plaintiff and her estate prevented her from

11   discovering that defendant caused her mother's death, and that she first suspected his

12   involvement in early 2008 when defendant referred to Nancy Galvani's death during a

13   heated argument.  Id. ¶ 16.  Plaintiff contacted the San Mateo Sheriff's Department a few

14   months afterward, and plaintiff was informed by a former family member that the

15   investigators thought that defendant was caring for plaintiff on the night of Nancy Galvani's

16   death, when actually plaintiff was being cared for by defendant's uncle.  Id.  Plaintiff

17   realized that defendant did not have an alibi on the night of her mother's death and so

18   informed the investigating officer.  Id.  Plaintiff hired a private investigator who contacted

19   the San Mateo Sheriff's Department; in June 2009, the police conceded that they did not

20   know where plaintiff was on the night of her mother's death and gave the private

21   investigator access to the investigation file.  Id.

22        In March 2010, the private investigator provided plaintiff with evidence from the

23   homicide investigation, which resulted in no indictments or prosecutions.  Id. ¶ 17.  Charges

24   against defendant were dropped.  Id. ¶ 17 n.3.  Prior to this discovery, plaintiff alleges that

25   she could not have discovered a factual basis to pursue a wrongful death action against

26   defendant.  Id. ¶ 17.

27

28

1    Now pending before the court is defendant's motion to dismiss all claims in the

2  complaint on the ground that they are time-barred and fail to state a claim upon which relief

3  may be granted.

4                                **DISCUSSION**

5  I.    Legal Standard

6    "A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  A claim may be

7  dismissed only 'if it appears beyond doubt that the plaintiff can prove no set of facts in

8  support of his claim which would entitle him to relief.' "  Navarro v. Block, 250 F.3d 729, 732

9  (9th Cir. 2001).  Dismissal pursuant to Rule 12(b)(6) is appropriate where there is no

10 cognizable legal theory or there is an absence of sufficient facts alleged to support a

11 cognizable legal theory.  Id.  The issue is not whether a plaintiff is likely to succeed on the

12 merits but rather whether the claimant is entitled to proceed beyond the threshold in

13 attempting to establish his or her claims.  De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir.

14 1978).

15    In evaluating a motion to dismiss, all allegations of material fact are taken as true

16 and construed in the light most favorable to the nonmoving party.  See, e.g., Burgert v.

17 Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000) (citations omitted).

18 In order to survive a dismissal motion, however, a plaintiff must allege facts that are enough

19 to raise his/her right to relief "above the speculative level."  See Bell Atlantic Corp. v.

20 Twombly, 550 U.S. 544, 553-56 (2007).   While the complaint "does not need detailed

21 factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his

22 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic

23 recitation of the elements of a cause of action will not do."  Id.  A plaintiff must allege

24 "enough facts to state a claim to relief that is plausible on its face," not just conceivable.

25 Twombly, 550 U.S. at 570.; see also Ashcroft v. Iqbal, __U.S. __, 129 S. Ct. 1937, 1950

26 (2009).

27

28

II.     Analysis

      A.     Wrongful Death Claim

      The parties agree that the statute of limitations applicable to the wrongful death claim is California Code of Civil Procedure ("CCP") section 335.1 which sets a two-year limitations period.  The parties also agree that the statute was tolled while plaintiff was a minor pursuant to CCP section 352, such that the statute began to run on October 8, 1994 and expired on October 8, 1996, absent tolling.  The parties dispute whether plaintiff has adequately pled a basis for tolling under the discovery rule, CCP section 351 or fraudulent concealment.  The present motion to dismiss properly raises the issue whether the running of the statute is apparent on the fact of the complaint.  Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

      Plaintiff relies on a series of tolling doctrines to assert the timeliness of her claims.  First, plaintiff seeks application of the discovery rule starting from October 8, 1996 until March 1999, when defendant moved out of state.  When defendant moved to Illinois, plaintiff contends, the statute of limitations was tolled by operation of CCP section 351.  Alternatively, plaintiff contends that defendant's fraudulent concealment tolled the statute of limitations until she first suspected defendant of wrongdoing in early 2008.  Under either the discovery rule or fraudulent concealment theory, plaintiff relies on the application of section 351 to assert the timeliness of her wrongful death claim.  Pursuant to Ninth Circuit precedent and state appellate court authority holding that section 351 poses an impermissible burden on interstate commerce as applied to nonresident defendants that are amenable to service of process during the limitations period, the court determines that section 351 does not toll the limitations period and that the wrongful death action is untimely.

         1.     Discovery Rule

      Under the discovery rule, the cause of action accrues when the plaintiff "at least suspects a factual basis, as opposed to a legal theory, for its elements, . . .  when, simply put, he at least suspects that someone has done something wrong to him, 'wrong' being

1    used not in any technical sense, but rather in accordance with its lay understanding."

2    Norgart v. Upjohn, 21 Cal. 4th 383, 397-98 (1999) (citations and quotation marks omitted).

3    The plaintiff has reason to suspect when he has "notice or information of circumstances to

4    put a reasonable person *on inquiry*; he need not know the specific facts necessary to

5    establish the cause of action."  Id. at 398 (quotation marks omitted).  "Once the plaintiff has

6    a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to

7    file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go

8    find the facts; she cannot wait for the facts to find her."  Jolly v. Eli Lilly & Co., 44 Cal. 3d

9    1103, 1111 (1988).

10        To survive a motion to dismiss, "a plaintiff whose complaint shows on its face that

11   his claim would be barred without the benefit of the discovery rule must specifically plead

12   facts to show (1) the time and manner of discovery and (2) the inability to have made

13   earlier discovery despite reasonable diligence."  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.

14   4th 797, 808 (2005).  Plaintiff bears the burden of showing reasonable diligence.

15        Plaintiff alleges that defendant was actively subverting the truth, precluding her from

16   discovering the facts of her mother's death, especially before March 1999, when defendant

17   moved to Illinois.  Though defendant contends that plaintiff at least suspected defendant's

18   wrongdoing since the death of her mother in 1982, doc. no. 42 at 7, plaintiff alleges that she

19   did not have any reason to suspect defendant's wrongdoing until early 2008, when

20   defendant "made some vague - different - reference to the cause of NANCY GALVANI's

21   death." Compl. ¶ 16.  Thus the discovery rule would have tolled the limitations period at the

22   latest until early 2008.  Although plaintiff contends that she acted reasonably and promptly

23   on her early suspicions, plaintiff would have been able to "go find the facts" in early 2008,

24   yet did not file the wrongful death action until December 2010, more than two years after

25   she had a suspicion of wrongdoing.  Jolly, 44 Cal. 3d at 1111.

26        Plaintiff contends that she contacted the Sheriff's Department a few months after

27   defendant referred to her mother's death, and that during the investigation by the Sheriff's

28   Department, she inadvertently discovered additional information from a former family

1   member who told her that defendant used a false alibi on the night of her mother's death.

2   Compl. ¶ 16.  Plaintiff promptly contacted the San Mateo County investigator with this

3   information, and by June 2009, the police conceded that they did not know defendant's

4   whereabouts on the night of the murder.  The police allowed plaintiff's private investigator

5   access to the investigation file, and the investigator provided plaintiff with the evidence from

6   the 1982 homicide investigation file in March 2010.  Id.  Although plaintiff contends that the

7   information in that file was the first notice of her cause of action against defendant, these

8   attempts at uncovering facts were triggered by the vague statement made by defendant

9   almost two years before plaintiff was given the homicide investigation file.  The relevant

10  event for the cause of action to accrue under the discovery rule is when plaintiff had notice

11  of circumstances to put her "*on inquiry*;" not when she had knowledge of "the specific facts

12  necessary to establish the cause of action."  Norgart, 21 Cal. 4th at 398.

13         Under application of the discovery rule, the wrongful death claim would have

14  accrued no later than early 2008 when plaintiff suspected that defendant had wronged her.

15  Thus, the claim for wrongful death, filed in December 2010, is untimely, absent further

16  tolling.

17                    2.      Section 351

18         Plaintiff contends that the statute of limitations was tolled when defendant moved to

19  Illinois pursuant to CCP section 351, which plaintiff contends would indefinitely toll the

20  limitations period while defendant resides outside California.  Doc. no. 31 at 5-6.  Section

21  351, enacted in 1872, provides as follows:

22                    If, when the cause of action accrues against a person, he is out of
                      the State, the action may be commenced within the term herein
23                    limited, after his return to the State, and if, after the cause of action
                      accrues, he departs from the State, the time of his absence is not
24                    part of the time limited for the commencement of the action.

25  At oral argument, the parties addressed the line of cases cited by defendant in his reply

26  brief in support of his argument that section 351 poses an unconstitutional burden on

27  interstate commerce by imposing a longer statute of limitations on nonresident defendants

28

                                                    6

1   or residents who move out of California than on those who reside and remain in the state.

2   Doc. no. 42 at 8-9.

3        Following <u>Bendix Autolite Corp. v. Midwesco Enterprises, Inc.</u>, 486 U.S. 888 (1988),

4   in which the Supreme Court held that an Ohio statute of limitations posed an impermissible

5   burden on commerce, the Ninth Circuit reviewed section 351 and determined that it violated

6   the Commerce Clause as applied to a person engaged in interstate commerce outside of

7   California.  <u>Abramson v. Brownstein</u>, 897 F.2d 389, 392-93 (9th Cir. 1990).  The Ninth

8   Circuit found that section 351 imposed a significant burden by forcing " a nonresident

9   individual engaged in interstate commerce to choose between being present in California

10  for several years or forfeiture of the limitations defense, remaining subject to suit in

11  California in perpetuity."  <u>Id</u>. at 392.  Applying <u>Bendix</u>, the Ninth Circuit weighed the burden

12  created by section 351 against the state's interest in applying the tolling statute.  Because

13  state law requires the tolling statute to apply to persons even if they are amenable to

14  service of process, the Ninth Circuit determined that the state's interest in alleviating "'any

15  hardship that would result by compelling plaintiff to pursue defendant out of state'" did not

16  support the significant burden on interstate commerce because "'the California long arm

17  statute would have permitted service on [the defendant] throughout the limitations period.'"

18  <u>Id</u>. at 393 (quoting <u>Dew v. Appleberry</u>, 23 Cal. 3d 630, 637 (1979); <u>Bendix</u>, 486 U.S. at

19  894).

20       In <u>Heritage Marketing & Ins. Services, Inc. v. Chrustawka</u>, the court of appeal

21  considered whether section 351 could be applied to former California residents who moved

22  out of the state and started a new business.  160 Cal. App. 4th 754 (2008).  The court of

23  appeal determined that section 351 violated the Commerce Clause by penalizing "people

24  who move out of state by imposing a longer statute of limitations on them than on those

25  who remain in the state."  <u>Id</u>. at 763.  The court held that under the facts of that case,

26  applying section 351 "would impose an impermissible burden on interstate commerce as it

27  would force defendants to choose between remaining residents of California until the

28  limitations period expired or moving out of state and forfeiting the limitations defense, thus

1   'remaining subject to suit in California in perpetuity.'" Id. (quoting Abramson, 897 F.2d at

2   392).

3       In Dan Clark Family Limited Partnership v. Miramontes, 193 Cal. App. 4th 219, 227-

4   31 (2011), the court of appeal reviewed the authorities following Bendix that considered

5   whether application of section 351 violates the Commerce Clause.  In Dan Clark, the

6   plaintiff asserted section 351 to toll the applicable three-year statute of limitations against

7   the defendants who allegedly traveled between California and Mexico for personal reasons

8   and allegedly did not engage in interstate commerce from the time of the alleged

9   conversion until the plaintiff filed suit.  The appellate court determined that the complaint

10  demonstrated that the defendants were engaged in commerce when they allegedly took

11  possession of the plaintiff's vehicles, and concluded that application of section 351 violated

12  the Commerce Clause because "it would essentially force [the defendants] to either

13  become residents of California or to be subject to suit in California in perpetuity."  Id. at 233

14  (citing Abramson).  The court of appeal reasoned that the state's interest in applying the

15  tolling provisions of section 351 could not outweigh the burden on interstate commerce

16  because California "has a long-arm statute that would permit service on foreign

17  defendants."  Id. at 234.

18      Relying on this line of cases, defendant contends that the tolling provisions of

19  section 351 pose an impermissible burden on commerce and cannot be applied to him.

20  Here, it is undisputed that defendant "remained a resident of San Francisco County until on

21  or about March 1999, when he moved his residence to Chicago, Illinois."  Compl. ¶ 10.  At

22  oral argument, plaintiff contended that the authorities on which defendant relies were

23  distinguishable on the ground that defendant has not demonstrated that he moved to Illinois

24  for the purpose of engaging in interstate commerce or otherwise showed any impact on

25  interstate commerce.  A similar argument was rejected in Dan Clark, where the plaintiff

26  argued that "'the focus of a Section 351 analysis should be on the reason why the

27  defendant left California, and if that reason does not involve commerce, the Commerce

28  Clause is not implicated.'"  193 Cal. App. 4th at 234.  The court of appeal reasoned that a

1   resident who leaves the state for personal reasons is entitled to the same protection under

2   the Commerce Clause as a nonresident engaged in commerce:

3           A resident defendant engaged in commerce in the state of California
            automatically receives the benefits of California's statute of limitations
4           by virtue of his or her presence in California.  A nonresident
            defendant, on the other hand, is potentially subject to liability in
5           California indefinitely.  Such application of the tolling statute
            discourages nonresidents from engaging in commercial transactions
6           in California.  Applying the tolling provisions of section 351 to a
            nonresident defendant engaged in commerce burdens interstate
7           commerce in a way that applying it to a resident defendant who
            leaves the state for personal reasons does not.  This result is
8           impermissible under the Commerce Clause.

9   193 Cal. App. 4th at 234.

10          Here, as fully demonstrated in the evidentiary hearing held by the court on plaintiff's

11  motion to remand, plaintiff served defendant in Illinois and defendant did not challenge

12  personal jurisdiction over plaintiff's wrongful death claim.  Because defendant was

13  amenable to service of process, as in Abramson and Dan Clark, the state's interest in

14  applying section 351 does not outweigh the burden imposed on interstate commerce by

15  forcing defendant to choose between remaining in California or being subject to suit in

16  perpetuity, whether he moved to Illinois for personal or business reasons.  The court

17  determines that the holding of Dan Clark follows Bendix and Abramson, and accordingly

18  adopts its reasoning to conclude that application of section 351 against defendant, a former

19  resident who moved out of state but remained subject to service of process throughout the

20  period of limitations, is an impermissible burden on interstate commerce.  Because section

21  351 does not apply, the limitations period on plaintiff's wrongful death action was not tolled

22  after early 2008, when plaintiff was placed on inquiry notice of her claim.  Because the

23  complaint was filed more than two years afterward, the wrongful death action is untimely.

24                          3.      Fraudulent Concealment

25          Plaintiff contends that she has sufficiently alleged grounds for tolling the statute of

26  limitations on the ground of fraudulent concealment.  Doc. no. 31 at 7.  Under California

27  law, "the defendant's fraud in concealing a cause of action against him tolls the applicable

28  statute of limitations, but only for that period during which the claim is undiscovered by

9

1    plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have

2    discovered it."  Sanchez v. South Hoover Hospital, 18 Cal.3d 93, 99 (1976).  To establish

3    that fraudulent concealment tolled the applicable statute of limitations, "the complaint must

4    show: (1) when the fraud was discovered; (2) the circumstances under which it was

5    discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual

6    or presumptive knowledge of facts sufficient to put him on inquiry."  Baker v. Beech Aircraft

7    Corp., 39 Cal. App. 3d 315, 321 (1974).

8          Plaintiff alleges that defendant actively manipulated and controlled her and lied

9    about information on her mother's death, precluding her from discovering the facts of her

10   mother's death, especially before March 1999, when plaintiff was 22 years old and living in

11   England.  The complaint alleges that since the death of Nancy Galvani, defendant has

12   denied any involvement in the death of plaintiff's mother, and that defendant continued to

13   emotionally and intellectually manipulate plaintiff "while she was a young adult (10-8-94

14   until mid 2002)."  Compl. ¶ 11.  Thus, even when the allegations are taken as true,

15   defendant's manipulation of plaintiff ended in about "August 2002, when she moved to

16   Berkeley, California."  Compl. ¶ 9.

17         Under the allegations of the complaint, plaintiff was put on inquiry notice of

18   defendant's fraudulent conduct at the latest in early 2008 when defendant made a vague

19   reference to her mother's death.  As under the discovery rule, the fraudulent concealment

20   doctrine tolls the limitations period at the latest until early 2008, rendering the wrongful

21   death claim untimely as of early 2010.

22         B.    Conversion Claim

23         In support of the claim for conversion, the complaint alleges that defendant

24   "misappropriated" plaintiff's income by using it to support her while she was a minor, and

25   through 2001, and that he inappropriately lived "rent-free" in her real property until 1996.

26   Compl. ¶ 23.  Plaintiff further alleges that defendant misappropriated unspecified "child

27   modeling earnings," borrowed money, and delayed transferring title of real property in San

28   Francisco to her until 2001, leading to a loss in unspecified rental income. Id. ¶¶ 12, 23.

1   She also alleges, upon information and belief, that her father diverted some portion of

2   government assistance checks to himself while raising her as a minor.  Id. ¶ 24.

3          Defendant seeks dismissal of the conversion claim on two grounds.  First, defendant

4   contends that plaintiff fails to identify a specific sum of money and that a "generalized claim

5   for money [is] not actionable as conversion."  Doc. no. 24 at 14-15 (citing <u>Vu v. Cal.</u>

6   <u>Commerce Club, Inc.</u>, 58 Cal. App. 4th 229, 235 (1997)).  At the pleading stage, this

7   challenge is not sufficient to dismiss the complaint because plaintiff asserts that defendant

8   held the funds in trust for plaintiff and that the converted funds, though unspecified, are

9   "capable of identification."  Doc. no. 31 at 7-8 (citing <u>PCO, Inc. v. Christensen, Miller, Fink,</u>

10  <u>et al.</u>, 150 Cal. App. 4th 384, 396-97 (2007)).

11         Defendant also contends that conversion claim is time-barred under the applicable

12  three-year statute of limitations pursuant to CCP 338.  Plaintiff only refers to "the prior

13  analysis" of the tolling of the limitations period.  Taken as true, the allegations of the

14  complaint establish that defendant misappropriated plaintiff's property until 2001, resulting

15  in a loss of rental income.  Compl. ¶ 23.  Thus, the limitations period would expire by the

16  end of 2004.  The allegations of fraudulent concealment as to the wrongful death action do

17  not apply to plaintiff's claim for conversion.  Thus, the conversion claim is also untimely.

18                                    **CONCLUSION**

19         For the reasons set forth above, defendant's motion to dismiss is GRANTED WITH

20  PREJUDICE.

21  **IT IS SO ORDERED.**

22

23  Dated: September 12, 2011

24                                                    _____

25                                                    PHYLLIS J. HAMILTON
                                                      United States District Court

26

27

28

11